# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

(1) EYOEL-DAWITT MATIOS

      Plaintiff,

      v.                                           No. 23-cv-01844-WPJ

(1) CITY OF LOVELAND;
(2) NATHAN, DUMM AND MAYER, P.C.;
(3) STEPHEN C. ADAMS;
(4) MOSES GARCIA;
(5) ASHLEY HERNANDEZ-SCHLAGEL;
(6) TIMOTHY M. TYMKOVICH,
    U.S. Circuit Court Judge;
(7) NORMAN REID NEUREITER,
    U.S. Magistrate Judge
(8) JEFFREY P. COLWELL,
    Clerk of the Court;

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court[1] mainly upon motions to dismiss filed by Defendant City of Loveland ("City") and Defendant Nathan, Dumm and Mayer, P.C. ("Firm") (Doc. 22), and Defendant Norman Reid Neureiter's ("Judge Neureiter") (Doc. 24), both filed in October 2023. Plaintiff responded to each (Docs. 28, 29),[2] to which Defendants replied (Docs. 32, 31). Both motions seek dismissal of Plaintiff's Amended Complaint (Doc. 18). There are various other pending matters before the Court, which will be addressed throughout this opinion.

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case pursuant to 28 U.S.C. § 292(b) and with the approval of Chief Judge Philip A. Brimmer. *See* Doc. 16. Since this case has been reassigned to Judge Johnson as a result of the recusal of the judges from the District of Colorado, Plaintiff's Motion to Recuse (Doc. 14) is denied as moot.

[2] Plaintiff requested the Court for more time to respond to the motions to dismiss. Doc. 25. The Court excuses any untimeliness in filing a response and therefore denies the motion as moot.

Having reviewed the parties' briefing, the relevant documents, and the applicable law, the Court finds the Defendants' motions to dismiss are well-taken and, for the reasons that follow, grants them both. The Court also dismisses all claims against the remaining Defendants.

## STANDARD

A plaintiff's complaint must contain "a short and plain statement of the claim showing that [he is] entitled to relief." Fed. R. Civ. P. 8(a)(2).  Generally, this is a low burden for the plaintiff to satisfy. For the complaint to survive a defendant's motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is the *Twombly/Iqbal* plausibility standard: The complaint's allegations must cross the line from conceivable to plausible and must be more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" or "formulaic recitation[s] of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

Overall, the "plausibility" standard refers to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "'The

*Twombly* standard may have greater bite' in the context of a § 1983 claim against individual government actors, because 'they typically include complex claims against multiple defendants.'" *Kan. Penn Gaming, LLC*, 656 F.3d at 1215 (quoting *Robbins*, 519 F.3d at 1249). It is "particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Kan. Penn Gaming, LLC*, 656 F.3d at 1215 (internal quotation marks omitted).

Plaintiff is proceeding *pro se*. So, his pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). If the Court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* However, the Court cannot serve as an advocate for a *pro se* plaintiff or construct theories on his behalf. *Id.* "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (citation omitted). These standards inform the ensuing background section.

## BACKGROUND

Although Plaintiff filed this case on July 20, 2023, this controversy has its origins in proceedings dating back to 2021. So, to understand the procedural posture of this instant action, it is necessary to survey the history of this curious matter.[3]

On August 12, 2021, Plaintiff filed a petition to confirm an arbitration award in the District of Colorado. *Matios v. City of Loveland*, No. 21-cv-02194 (D. Colo. August 12, 2021). This petition sought to confirm a $300,000,000 arbitration award he allegedly obtained against the City through a company called "Sitcomm Arbitration Association," a company "shrouded in mystery" that is now well-known in federal courts[4] for "pirate arbitration." *See* David Horton, *Pirate Arbitration* 106 MINN. L. REV. 2111, 2111, 2119, 2140 (2022). The problem with Plaintiff's alleged $300,000,000 arbitration award is that the City never agreed to arbitrate anything with Plaintiff and never entered into an arbitration agreement with him. *See Matios v. City of Loveland*, 2022 WL 2734270, at *1 (10th Cir. July 14, 2022). So, when the City objected to Plaintiff's petition to confirm the award, Magistrate Judge Neureiter (who was referred the case for a recommendation) denied the petition, stating:

> There is no evidence of agreement by the City ever to enter into an arbitration agreement with Mr. Matios. Neither is there any evidence of consideration by Mr. Matios. Nor is there any evidence or even an allegation that anyone on behalf of the City had the authority to enter into a contract with Mr. Matios. The notion that Mr. Matios could simply send a letter to the City demanding a response and declaring that a failure to respond would constitute a self-executing, binding arbitration agreement is both fanciful and contrary to fire legal principals.

---

[3] "In ruling on a motion to dismiss, a federal court may take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue." *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir. 2023).

[4] The Tenth Circuit Court of Appeals identified the following cases involving Sitcomm Arbitration Association in *Matios v. City of Loveland*, 2022 WL at *1 n.4: *Mark Wayne Nation v. United States*, 2022 WL 1655693, at *1 n.* (Fed. Cir. Feb. 23, 2022); *Castro v. Bank of N.Y. Mellon*, 852 F. App'x 25, 29 n.1 (2d Cir. 2021) (unpublished); *United States v. Hallman*, 2021 WL 3773335, at *1 n.1 (D.S.C. Aug. 25, 2021); *Anderson v. United States*, 2021 WL 2417157, at *1 (S.D. Tex. June 14, 2021); *Nelson v. Jackson*, 2021 WL 5035027, at *1 (M.D. Ga. April 28, 2021); *Domino v. Barr*, 2021 WL 1795762, at *1 n.1 (D. Minn. Feb. 8, 2021). *See also* David Horton, *Pirate Arbitration*, 106 MINN. L. REV. 2111, 2139–40 (2022).

*Matios v. City of Loveland*, No. 21-cv-02194 (D. Colo. August 12, 2021) [Doc. 37, at 14]. Magistrate Judge Neureiter's recommendation was ultimately adopted by the district court judge.

The matter was then appealed to the Tenth Circuit Court of Appeals. On July 14, 2022, the Tenth Circuit vacated the district court's order on jurisdictional grounds because Plaintiff's petition to confirm the arbitration award did not establish federal question jurisdiction nor was there diversity jurisdiction. *Matios*, at *2–3. So, the district court was ordered to dismiss the case without prejudice. *Id.* at *3. Additionally, on remand and as a sanction against Plaintiff, the district court awarded attorney fees in the amount of $11,764.50 to the City, which Plaintiff unsuccessfully appealed. *See Matios v. City of Loveland*, 2023 WL 4145905 (10th Cir. June 23, 2023). Although Plaintiff's arbitration award matter was denied, appealed, dismissed without prejudice, sanctioned, and appealed again, this was just the beginning.

In July 2023, Plaintiff instituted this related action. *See* Docs. 2, 18.[5] In his lengthy, 42-page and 197-paragraph First Amended Complaint, Plaintiff lodges many allegations against all the Defendants of a grand conspiracy to deny him his claimed arbitration award. Doc. 18. Plaintiff argues his award was denied through fraudulent and forged orders written by the Firm, a lawyer in the Firm, the District of Colorado, judges and personnel within the judiciary, and the United States Court of Appeals for the Tenth Circuit. Doc. 18. Specifically, Plaintiff alleges that Judge Neureiter,

> in coordination with Defendant, City of Loveland, by and through legal counsel, and with assistance of an anonymous District Court clerk and Tenth Circuit staff attorney, filed fraudulent and/or forged orders and judgments to deny Plaintiff's legally entitled relief, in violation of his due process and equal rights of access to courts and right to petition government for relief of grievances.

---

[5] Defendant City and Firm originally filed a motion to dismiss Plaintiff's original complaint. *See* Doc. 15. However, Plaintiff then filed his Amended Complaint. *See* Doc. 18. Because an amended pleading supersedes the pleading it modifies, it moots any motions to dismiss directed at that inoperative pleading. *See Arroyo v. Marriott Corp.*, 2020 WL 10320908, at *2 (D. Colo. Jan. 23, 2020). Therefore, Defendants' motion to dismiss filed September 22, 2023, (Doc. 15) is denied as moot.

*Id.* at ¶ 17. Within this alleged conspiracy, Plaintiff claims that Defendants "Jeffrey P. Colwell and Timothy M. Tymkovich . . . were aware that such unlawful acts were occurring and either pre-approved of such unlawful acts, or knowingly allowed such unlawful acts to occur unabated, and thereby became co-conspirators in the unlawful acts." *Id.* at ¶ 19. Further, Plaintiff alleges that Defendant-lawyer Ashley Hernandez-Schlagel, Defendant Firm, Defendant City, and Defendant Judge Neureiter authored a fraudulent order for the district court and "bribed Tenth Circuit doe clerks and Colorado team staff attorney to issue the order to dismiss appeal case 22-1242." *Id.* at ¶¶ 79–80. In all, Plaintiff's Amended Complaint alleges a conspiracy between all the Defendants to deny him of his $300,000,000 arbitration award. Plaintiff provides no dates as to when any of the alleged conspiracies, briberies, forgeries, or fraud occurred. Nor does Plaintiff offer any further factual enhancement to support his many conclusory allegations.

Based on Plaintiff's allegations, he has listed as defendants the City of Loveland, Stephen Adams, Moses Garcia, Nathan Dumm & Mayer P.C., lawyer Ashley Hernandez-Schlagel, Tenth Circuit Judge Timothy Tymkovich, Judge Neureiter, Jeffrey Colwell, and various unnamed defendants. Against these Defendants, Plaintiff lists seven "Claims for Relief." *See* Doc. 18, at ¶¶ 168–197. The first is a claim for declaratory judgment on eight questions of law. *Id.* at ¶ 168. The second claim is for this Court to confirm his arbitration award. *Id.* at ¶¶ 169–176. His third claim—against all the Defendants—alleges due process and equal rights violations "under the Fourth Amendment," as secured "through the Fourteenth Amendment." *Id.* at ¶ 178.  Plaintiff argues this is actionable under "42 U.S.C. § 1981, § 1983, and § 1985." *Id.* at ¶ 180. The fourth claim against all Defendants is a "Civil Rights Violation," citing 42 U.S.C. § 1986. *Id.* at ¶ 181–84. The fifth claim is an "Abuse of Process" "state claim" under 28 U.S.C. § 1391(b) and § 1367. *Id.* at ¶¶ 185–88. The sixth claim is "Intentional Infliction of Emotional Distress," actionable under 28 U.S.C. §

1391(b) and § 1367. *Id.* at ¶¶ 189–92. Lastly, Plaintiff's seventh claim is a "Biven's Claim" against "Defendants, Tenth Circuit staff attorney and doe clerks," actionable under 28 U.S.C. § 1331. *Id.* at ¶¶ 193–97. Finally, Plaintiff seeks compensatory and punitive damages, declaratory judgment, and confirmation of his arbitration award. *Id.* at 41.

## DISCUSSION

Before the Court are many matters. First, there are two motions to dismiss that challenge Plaintiff's Amended Complaint. Doc. 18.[6] The Court will first discuss Defendant Judge Neureiter's motion (Doc. 24), then will address each of Plaintiff's claims within the context of Defendant City and Firm's motion to dismiss (Doc. 22). Second, once the motions to dismiss are handled, the Court will discuss the remaining Defendants. Third, the Court will address Plaintiff's request to amend his complaint a second time. Fourth and last, the Court discusses dismissal with or without prejudice.

## I.    Judge Neureiter's Motion to Dismiss

Judge Neureiter, in his motion to dismiss, argues that all claims against him should be dismissed because Plaintiff has not perfected service on him, because he is entitled to absolute judicial immunity from suit, and because Plaintiff has failed to state a claim against him. Doc. 24, at 6–7. Plaintiff fails to respond to Judge Neureiter's argument that service was not perfect on him, and that Plaintiff failed to state a plausible claim against him. *See* Doc. 29. Plaintiff only dedicates two sentences to the absolute judicial immunity argument, quoting that judicial immunity is not intended to protect "corrupt judges." *Id.* at 11.   Despite Plaintiff's lack of response—which the

---

[6] On February 12, 2024, Defendant Ashley Hernandez-Schlagel filed a motion to dismiss. Doc. 39. Because the Court, for the reasons articulated throughout this opinion, dismisses all claims against Mrs. Hernandez-Schlagel, her motion to dismiss is moot and a response by Plaintiff and reply by Defendant is not necessary.

Court could deem as confessed—the Court will proceed with a full analysis. For the reasons that follow, the Court agrees with Judge Neureiter.

Judge Neurieter is entitled to absolute judicial immunity. As both parties point out, "[a]bsolute judicial immunity is not intended for the protection of corrupt judges but rather for the benefit of the public to enable judges to perform their duties without fear of consequences." *Van Sickle v. Holloway*, 791 F.2d 1431, 1434–35 (10th Cir. 1986). From here, however, Plaintiff's argument runs astray. Judicial immunity is immunity not just from damages but is immunity from the suit itself. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Accordingly, "judicial immunity is not overcome by allegations of bad faith or malice" or corruption. *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Absolute judicial immunity can be overcome only for non-judicial actions or judicial actions taken in the complete absence of all jurisdiction. *Id.* at 11–12. Whether "an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity." *Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001).

Plaintiff, through only conclusory and factually implausible allegations, states that Judge Neureiter was part of this alleged grand conspiracy by filing "fraudulent and/or forged orders and judgments to deny Plaintiff's legally entitled relief. . . ." Doc. 18, at 8. In reality, Judge Neureiter was performing the exact judicial functions vitally conducted by magistrate judges: he was referred a case by the district court judge (case no. 21-cv-2194) consistent with federal law and issued his report and recommendation to the district judge. Plaintiff's dissatisfaction with the result reached

not only by magistrate Judge Neureiter, but by the district court and the Tenth Circuit, does not overcome Judge Neureiter's absolute judicial immunity. Therefore, all claims in Plaintiff's Amended Complaint against Defendant Judge Neureiter are dismissed with prejudice.[7]

## II.     Claims 1 and 2 are Dismissed Under the Doctrine of Collateral Estoppel

Plaintiff's first and second claims directly relate to his prior litigation against the City where he sought to confirm his alleged arbitration award. Additionally, the claims directly relate to the prior sanctions levied against Plaintiff and he attempts to question—again—the magistrate judge's participation in the prior proceedings. Now in this current action, Plaintiff asks this Court to relitigate those exact same issues. The doctrine of collateral estoppel prevents this kind of maneuver.

Under the doctrine of collateral estoppel, also known as issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). In other words, if an issue has already been litigated, a party cannot relitigate those same issues in another lawsuit involving the same parties. This doctrine "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979). In the Tenth Circuit, collateral estoppel will bar a claim if four elements are met:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

---

[7] The Court, having determined that Judge Neureiter is entitled to absolute judicial immunity, does not need to consider whether Judge Neureiter was properly served.

*Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 979 (10th Cir. 1995). The dismissal of an action for lack of jurisdiction is not a final adjudication on the merits. *Park Lake Resources Ltd. Liability v. U.S. Dept. of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

Plaintiff previously filed suit against the City to confirm his alleged arbitration award, in case number 21-cv-02194 (D. Colo. Aug. 12, 2021). The matter was appealed, remanded, and appealed again when ultimately, the Tenth Circuit ordered the district court to dismiss the case without prejudice because there was no subject matter jurisdiction. *Matios v. City of Loveland*, 2022 WL 2734270, at *2 (10th Cir. 2022). The Tenth Circuit specifically concluded that the Federal Arbitration Act ("FAA") "does not create any independent federal-question jurisdiction," so Plaintiff's complaint did not establish federal question jurisdiction. *Id.* Additionally, the district court imposed sanctions on Plaintiff, which was affirmed by the Tenth Circuit Court of Appeals. 2023 WL 4145905 (10th Cir. 2023). In that appeal, the Tenth Circuit also rejected Plaintiff's arguments regarding the magistrate judge's participation, and stated that Plaintiff's "unsupported, speculative accusations are insufficient to undermine those orders." *Id.* at *3. Now, in Plaintiff's first and second claims, he seeks—again—to have his alleged arbitration award confirmed and to relitigate all the same issues already handled by the U.S. District Court for the District of Colorado and the Tenth Circuit Court of Appeals.

All the elements of collateral estoppel are met: the arbitration award, the sanctions, and the court's inherent powers were issues previously handled and is again presented here; the prior action dealing with the sanctions was finally adjudicated on the merits, and the prior action dealing with the claimed arbitration award issues ended in a dismissal after many appeals; the parties are the same; and Plaintiff had a full and fair opportunity to litigate the issues—which he did through many filings and appeals. It is true that the Tenth Circuit, in *Matios*, ordered the district court to

dismiss the case on *jurisdictional* grounds, which is generally not a final adjudication on the merits. However, it would be mistaken to say that "a jurisdictional dismissal can have *no* issue-preclusive effect. There is an important exception to the general rule that a final adjudication on the merits is a prerequisite to issue preclusion. . . . In particular, dismissals for lack of jurisdiction 'preclude relitigation of the issues determined in ruling on the jurisdiction question.'" *Park Lake Resources*, 378 F.3d at 1136 (compiling sources). Therefore, although the Tenth Circuit case did not result in an "adjudication on the merits, it has issue-preclusive consequences with respect to the issue decided." *Id.* The Tenth Circuit held the FAA did not confer federal jurisdiction *because* the matter involved "contractual disputes" which are issues of state law, not federal law. *Matios I*, at *2. So too here, for Claims 1 and 2, the Court lacks jurisdiction to resolve those issues and Plaintiff "cannot now present an argument that conflicts with [the Tenth Circuit's] decision on that issue." *Park Lake*, at 1137.

Plaintiff cannot endlessly attempt to relitigate that which is final. The doctrine of collateral estoppel bars Plaintiff's first and second claims because they involve the exact same issues already resolved in his prior suits against the City. Accordingly, those claims are hereby dismissed with prejudice.

## III.   Claims 3, 4, and 7

Plaintiff alleges the City was part of the vast conspiracy to deny him his claimed $300,000,000 arbitration award and therefore violated various constitutional and statutory provisions, actionable under 42 U.S.C. § 1983. Specifically, Plaintiff alleges violations of "due process under the Fourth Amendment," secured through the Fourteenth Amendment, equal rights violations, and are redressable through 42 U.S.C. §§ 1981, 1983, and 1985. Doc. 18, at ¶¶ 177–80. The Court will first address Defendant City's arguments, then will proceed with Defendant Firm.

Defendant City argues that Claims 3 and 4 should be dismissed because Plaintiff fails to state a claim for municipal liability against the City (Doc. 22, at 11–12); and Plaintiff fails to state a constitutional violation or other federal claim against the City or Firm (*Id.* at 12–18). It argues that the Amended Complaint should be dismissed with prejudice (*Id.* at 19–20). Plaintiff filed a response. Doc. 28. In it, he largely restates the many allegations in his First Amended Complaint and does not substantively address or even acknowledge Defendant City's arguments. *Id.* at 2–7, 9–11. Plaintiff only adds that his complaint should not be dismissed with prejudice, and he should be allowed to amend his complaint again to serve the interests of justice. *Id.* at 8. The Court finds Defendant City's arguments persuasive. At the outset, the Court could deem Defendant City's arguments as confessed by Plaintiff because Plaintiff did not address them at all. However, the Court will proceed regardless.

For a city—or a municipality—to be held liable under § 1983, a plaintiff must establish (1) the existence of an official municipal policy or custom, (2) a direct causal link between the policy or custom and the constitutional injury, and (3) the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury. *Schneider v. City of Grand Junction Police* Dep't, 717 F.3d 760, 769–70 (10th Cir. 2013); *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The purpose of this framework is to separate the acts of employees and the acts of the municipality because "under § 1983, local governments are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). To withstand a motion to dismiss, "a § 1983 municipal liability claim must include factual allegations that a particular municipal custom or policy was the moving force behind the constitutional injury." *Soto for estate*

*of Jimenez v. Bd. of Cnty. Commr's of Caddo Cnty., Okla.*, 748 Fed. App'x 790, 794 (10th Cir. 2018).

Here, Plaintiff's complaint is devoid of any factual allegations that a particular city custom or policy was the moving force behind a constitutional injury. Time and time again Plaintiff continues to make conclusory, speculative, and bare allegations of a grand conspiracy of fraudulent pleadings within the federal judiciary to deny him his alleged arbitration award. *See* Docs. 18, 28, 29, 30, 37, 38. Plaintiff fails to identify a particular policy or custom of the City that has constitutionally injured him, and he has failed to specifically—or plausibly—articulate what constitutional violation occurred. Therefore, Plaintiff's federal claims against the City—actionable under 42 U.S.C. § 1983—fail to meet the "plausibility" pleading standard and are dismissed with prejudice. *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (affirming Rule 12(b)(6) dismissal of municipal-liability claim where the plaintiff only provided a formulaic recitation of the elements of the claim, and failed to provide sufficient factual allegations of a link between the injury and the municipal policy or custom); *Beedle v. Wilson*, 422 F.3d 1059, 1074 (10th Cir. 2005) (affirming Rule 12(b)(6) dismissal where plaintiff failed to identify a municipal policy or custom that caused plaintiff's injury).

Plaintiff also invokes § 1983 against Defendant Firm. Section 1983 states,

[e]very person who, *under color of any statute* . . . subjects . . . any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983 (emphasis added). In other words, § 1983 provides a cause of action for underlying deprivations of federal rights caused by those acting under the color of law, *i.e.*, state actors. Thus, under § 1983, "liability attaches only to conduct occurring 'under color of law.'" *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). "Under color of

law" requires "that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks omitted).

Here, there are no plausible allegations—nor any allegations—that Defendant Firm was acting under the color of state law or clothed with the authority of state law. Nor are lawyers or law firms who represent governmental entities in a civil action viewed as state actors for § 1983 purposes. *Bottone v. Lindsey*, 170 F.2d 705, 706 (10th Cir. 1948). Therefore, all claims against Defendant Firm predicated upon § 1983 are hereby dismissed with prejudice.

Plaintiff next invokes 42 U.S.C. §§ 1981, 1985, and 1986. First, § 1981 "was meant, by its broad terms, to proscribe discrimination in making or enforcement of contracts, against, or in favor of, any race . . . ." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (internal quotation marks omitted). Here, Plaintiff's allegations revolve around an alleged conspiracy to deny him his alleged arbitration award, through fraudulent orders written by Defendants. Plaintiff fails to plausibly plead the existence of any contract or that there was a racially motivated breach of a valid contractual relationship. Therefore, the Court dismisses his § 1981 claim with prejudice.

Second, § 1985 prohibits two or more persons conspiring to deprive another of the equal protection of the laws. § 1985(3). Section 1985 does not "create independent substantive rights," it is a "procedural statute[] which provide[s] a remedy for  deprivation of existing rights." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1448 (10th Cir. 1990). To establish a violation of § 1985(3), a plaintiff must show "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Section 1985(3) applies only to "conspiracies motivated by 'some racial, or perhaps otherwise class-based,

14

invidiously discriminatory animus,'" not all "tortious, conspiratorial interferences with the rights" of others. *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971)). Plaintiff fails to plead facts sufficient to establish a plausible violation of § 1985(3). It is true that Plaintiff, in a 40-plus page amended complaint, rattles off many allegations of bribery and a conspiracy between and among all eight Defendants to deny him his alleged arbitration award via forged and fraudulent judicial orders. However, these highly repetitive allegations are solely conclusory, lacking in further factual support, and highly speculative. Thus, the Court dismisses Plaintiff's § 1985(3) conspiracy claim with prejudice.

Plaintiff's fourth claim alleges a violation of § 1986, which makes unlawful every person who has knowledge of a § 1985 conspiracy that is brought through to fruition, and the person had the power to prevent its commission but did not do so. 42 U.S.C. § 1986. Although Plaintiff lists all the Defendants under this claim, it appears to be primarily aimed at Defendants Jeffrey P. Colwell and Tenth Circuit Judge Timothy Tymkovich. Doc. 18, at ¶¶ 181–84. Again, Plaintiff fails to plausibly plead a violation of § 1986 because, again, he provides only baseless, accusatory, conclusory, and speculative allegations against all the Defendants. The Court dismisses this claim with prejudice.

Lastly, Plaintiff's seventh claim is a "Biven's" claim against "Defendants, Tenth Circuit staff attorney and doe clerks." Doc. 18, at ¶¶ 193–97. *Bivens* is an implied cause of action created by the Supreme Court in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). A *Bivens* claim is recognized—very narrowly—in three circumstances: federal officers who violate the Fourth Amendment (*Bivens*); Fifth Amendment Due Process Clause violations in the context of gender discrimination (*Davis v. Passman*, 442 U.S. 228 (1979)); and Eight Amendment violations based on deliberate indifference to a federal inmate's serious medical needs (*Carlson v.*

*Green*, 446 U.S. 14 (1980)). *See Ziglar v. Abbasi*, 582 U.S. 131 (2017) ("*Bivens*, *Davis*, and *Carlson*[] represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself."). Plaintiff's *Bivens* claim fails. First, this claim cannot lie against Defendant City or Firm because they are not federal officers. Second, the claim cannot lie against Defendant Judge Neureiter because all claims against him are dismissed based on failure to perfect service and absolute judicial immunity. Third, the claim fails against the remaining Defendants for the reasons detailed in Section V. Plaintiff fails to plausibly plead a *Bivens* claim, and this claim is dismissed with prejudice.

## IV.   Claims 5 and 6

Plaintiff next alleges "abuse of process" and "intentional infliction of emotional distress" state law claims against Defendants Doc. 18, at ¶¶ 185–92. Plaintiff argues that Defendants intentionally deprived him of his right to an order confirming his alleged arbitration award, his right to appeal, and that he suffered emotional distress. *Id.* at ¶¶ 187, 191. Defendant City urges the Court to dismiss these state claims because the Court does not have subject matter jurisdiction over them, and Defendant Firm argues Plaintiff has failed to state a plausible claim against it. Doc. 22, at 18–19. Plaintiff does not respond to these arguments, but again, repeats his grand conspiracy allegations. Docs. 28, 29.

Federal district courts have original jurisdiction over civil actions arising under the U.S. Constitution, federal laws, or treaties; and where the parties satisfy diversity of citizenship and amount in controversy requirements. 28 U.S.C. §§ 1331, 1332. This means federal courts do not have *original* jurisdiction over state law claims. However, federal courts do have *supplemental* jurisdiction over all other claims (state claims) that are intertwined with the claims that give the court original jurisdiction. 28 U.S.C. § 1367(a). Exercising this supplemental jurisdiction over

state law claims is discretionary. A district court may decline to exercise supplemental jurisdiction over related state law claims if "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). At the same time, though, a court should seek to exercise supplemental jurisdiction to "vindicate values of economy, convenience, fairness, and comity." *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1164 (10th Cir. 2004).

Although the Court has dismissed all federal claims, the Court—in its discretion—will exercise supplemental jurisdiction over Plaintiff's fifth and sixth state law claims. The Court dismisses each. First, the Court agrees with Defendant City that the Court lacks subject matter jurisdiction over Plaintiff's state law claims against the City. Doc. 22, at 18. Under the Colorado Governmental Immunity Act ("CGIA"), the City is immune from Plaintiff's two state law claims. C.R.S. § 24-10-106; *see Walker v. Van Laningham*, 148 P.3d 391, 394 (Colo. App. 2006) (abuse of process); *see Popovich v. Irlando*, 811 P.2d 379, 385 (Colo. 1991) (intentional infliction of emotional distress). Additionally, Plaintiff was required to provide notice under C.R.S. § 24-10-109, or plead that a waiver of immunity applied under C.R.S. § 24-10-106. Plaintiff has done neither and fails to respond to the City's arguments. Since the "CGIA immunity impacts a court's subject matter jurisdiction," since the City is immune under the CGIA, and since Plaintiff has failed to provide notice under the CGIA, the Court dismisses with prejudice all state claims (Claims five and six) against the City under Fed. R. Civ. P. 12(b)(1). *See McKenzie v. City and Cnty. of Denver*, 2023 WL 5488465, at *7, *35 (D. Colo. July 21, 2023).

Second, as for the state claims against Defendant Firm, under Colorado law, an abuse of process claim requires the plaintiff to allege and prove: "(1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of proceedings, that is, use of a legal proceeding in an improper manner; and (3) resulting

damage." *Walker v. Van Laningham*, 148 P.3d at 394 (internal citations omitted). Here, Plaintiff fails to plausibly and sufficiently plead facts of an abuse of process claim against Defendant Firm. Plaintiff has not plausibly shown Defendant Firm has used the judicial process for an ulterior purpose or an improper manner; rather, Plaintiff continues his thinly veiled allegations of a conspiracy between all the Defendants. Lastly, intentional infliction of emotional distress under Colorado law requires Plaintiff to sufficiently allege facts that Defendant Firm engaged in "extreme and outrageous conduct intentionally or recklessly" and "cause[d] severe emotional distress to another." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999). For Defendant Firm to be liable, the level of outrageousness is "extremely high" and must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing Restatement (Second) of Torts § 46 (1965)). Again, Plaintiff fails to plausibly state such a claim and instead, provides unsupported allegations of forged court orders and bribery between all Defendants. Plaintiff's state law claims—abuse of process and intentional infliction of emotional distress—against Defendant Firm are dismissed with prejudice for failure to state a claim.

## V.    Remaining Defendants

The Court has dismissed all claims against Defendant Judge Neureiter, Defendant City, and Defendant Firm. However, Plaintiff's Amended Complaint—filed October 10, 2023—also lists as Defendants: Stephen C. Adams (City Manager of City of Loveland) (individually), Moses Garcia (City Attorney) (individually), Ashley Hernandez-Schlagel (Lawyer within Nathan Dumm & Mayer) (individually),[8] Judge Timothy M. Tymkovich (Tenth Circuit Judge) (officially and

---

[8] Ashley Hernandez-Schlagel and the law firm Nathan Dumm & Mayer are each named as Defendants. Mrs. Hernandez-Schlagel is a lawyer for the Firm and has written all the briefs for the Firm. Since Defendant has listed them both, the Court treats them as separate Defendants and the processes required by the Federal Rules of Civil

individually), and Jeffrey P. Colwell (District of Colorado Court Clerk) (officially and individually). Doc. 18. On January 5, 2024, the Clerk issued a summons addressed to Defendant Judge Neureiter and Defendant Hernandez-Schlagel. Doc. 35. In this document, Plaintiff included "Attachment A," where he handwrote the remaining Defendants plus several unnamed defendants. *Id.* None of these Defendants have entered appearances or have responded to Plaintiff's complaint. However, for the reasons that follow, the Court dismisses all of Plaintiff's claims against these five remaining Defendants.

The Federal Rules of Civil Procedure ("Rules") allow a court to dismiss an action on its own for a plaintiff's failure to effect timely service. Fed. R. Civ. P. 4(m). The Rules give a plaintiff 90 days after a complaint is filed to serve defendants with a copy of the summons and complaint and details the procedures the plaintiff must follow depending on who the defendant is (*e.g.*, a United States officer or employee sued in their individual or official capacities). *See* Fed. R. Civ. P. 4(a)–(c), (e), (i), (m). Plaintiff filed his Amended Complaint on October 10, 2023, where he added these Defendants. Doc. 18. So, he had until January 8, 2024, to perfect service on all these Defendants, consistent with Rule 4. As mentioned, Plaintiff had the Clerk issue a summons, with these remaining Defendants listed as "Attachment A." Doc. 35. The "Proof of Service" section— required under Rule 4(*l*)—was left blank by Plaintiff. *See Id.* at pages 3, 6. The only "proof of service" provided by Plaintiff on January 5, 2024, was that a process server served Defendant Judge Neureiter's law clerk. Doc. 36. Therefore, although all these remaining Defendants have not moved to dismiss Plaintiff's claim against them (nor enter any appearances), the Court—on its own—dismisses all the claims against these remaining Defendants because Plaintiff failed to timely effect service and comply with the Rules. *See Gallegos v. New Mexico*, 2022 WL 3226372,

---

Procedure must be satisfied as to each. Additionally, Mrs. Hernandez-Schalgel filed a motion to dismiss (Doc. 39), which the Court deems moot due to this opinion. *See supra* n. 6.

at *4 (D.N.M. Aug. 10, 2022) (granting motion to dismiss for insufficient service of process and *sua sponte* dismissing other claims for same reason); *see also infra* Section VII (discussing dismissal with or without prejudice).

Further, as set out below, the Court would also dismiss the claims against the remaining Defendants because they do not state a claim for relief or are barred by immunity[9] and allowing the claims to go forward would be contrary to justice and judicial economy.  Plaintiff's allegations do not articulate a short, plain statement for relief under Fed. R. Civ. P. 8(a), do not plead any claims for fraud with particularity as required by Fed. R. Civ. P. 9(b), do not make representations supported by law or fact in violation of Fed. R. Civ. P. 11(b), and do not state a plausible claim for relief under Fed. R. Civ. P. 12(b)(6).

## VI.    Plaintiff's Motion to Amend his Complaint

The Court dismisses all of Plaintiff's claims against all the Defendants for the above stated reasons. The question now becomes whether the Court should allow Plaintiff to amend his complaint a second time, as he requests in Doc. 30. For the reasons discussed below, amendment would be futile, and the Court denies Plaintiff's motion to amend his complaint a second time.

Plaintiff filed his original complaint on July 20, 2023. Doc. 2. Then, on October 10, 2023, he filed an Amended Complaint (Doc. 18), which is the subject of the instant motions to dismiss. A couple months later, Plaintiff asked this Court to amend his complaint again. Doc. 30. The Defendants oppose Plaintiff's request. Docs. 33, 34. Although Plaintiff's motion requesting leave to amend his complaint is nine pages long, much of it restates his previous allegations and he dedicates only one paragraph to why amendment is necessary. *Id.* at 8. Plaintiff states he

> intends to amend his Petition for Relief with the express purpose of reducing the
> number of claims and dismissing several defendants; therefore, amendment would

---

[9] Tenth Circuit Judge Tymkovich would also be entitled to absolute judicial immunity for the same reasons as Judge Neureiter.

> serve the interests of justice, in contrast with defendants interests to dismiss with prejudice to deny Mr. Matios' civil rights and equal right of access to courts and to petition government for relief of grievances.

*Id.*

The Federal Rules of Civil Procedure allow a party to amend their pleading once as a matter of course (within certain time frames), *i.e.*, without court approval. Fed. R. Civ. P. 15(a)(1). If a party wishes to amend its pleading again, it may only do so with the opposing party's written consent or the court's permission. Fed. R. Civ. P. 15(a)(2). Moreover, the Court should "freely give leave when justice so requires." *Id.* Additionally, the District of Colorado's local rules require that an opposed motion that seeks leave to amend a pleading for a second time must have attached a copy of the proposed amended pleading. D.C.Colo.LCivR 15.1(b). This is because "by attaching the proposed amended pleading to the motion, the movant allows the non-movant an opportunity to review and assess the proposed changes and formulate an appropriate response (including, potentially, conceding the motion)." *Sturm v. Weber*, 2022 WL 17547808, at *3 (D. Colo. Aug. 10, 2022).

Although a Court should freely allow amendment, it need not always do so. A "district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). And a "proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.*

In the case at bar, the Court is convinced that allowing Plaintiff to amend his complaint would not be in the interests of justice. First, Plaintiff failed to attach a copy of the proposed amended pleading to his motion, as required by the local rules. As Defendant Judge Neureiter points out, this failure alone is grounds for dismissal. *See* Doc. 33, at 5 (collecting cases). Second, even setting aside the procedural deficiencies, Plaintiff's argument as to why he requests to amend

his complaint again is insufficient. Plaintiff wishes to amend his complaint again only so he may reduce the number of claims and dismiss several defendants. Doc. 30, at 8. He neither identifies which claims he intends to reduce nor which defendants he will dismiss. Additionally, Plaintiff does not discuss how amendment would address the issues in the pending motions to dismiss. Had Plaintiff truly desired to reduce the number of claims or dismiss defendants, he could give notice that he's dismissing certain claims or defendants. A second amended complaint is not necessary to achieve that purpose.

## VII.   Dismissal with prejudice

Having dismissed all claims against all Defendants, the Court must now decide whether to dismiss the action with or without prejudice. Plaintiff urges the Court not to dismiss his claims with prejudice. *See* Docs. 28, at 8; 29, at 8; 30, at 8. Defendants conversely urge the Court to dismiss with prejudice. *See* Docs. 22, at 2, 19–20; 24, at 16. Because the Court dismisses Plaintiff's claims against some Defendants for different reasons, the inquiry for dismissal with prejudice as to some claims and Defendants differ as well.

First, the Court dismisses all claims with prejudice against Defendant City and Firm under the doctrine of collateral estoppel (for claims one and two) and Rule 12(b)(6) for failure to state a claim. In sum, Plaintiff did not plausibly allege sufficient facts for the claims he listed against Defendant City and Firm. Plaintiff could not prevail on the facts alleged and, as the Court discussed, it would be futile for Plaintiff to amend his complaint a second time. Although "pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment 'where it is obvious that the plaintiff cannot prevail on the facts . . . alleged and it would be futile to give . . . an opportunity to amend.'" *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010)).

Finally, a "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Id.* at 1190–91 (affirming the district court where it dismissed claims on its own without an opportunity to amend and with prejudice); *see Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006); *see also Gee*, 627 F.3d at 1181, 1195 (affirming dismissal with prejudice of claims barred by statute of limitations and claim preclusion).

The Court also dismissed all claims against Defendant Judge Neureiter because he is absolutely immune from suit. The Court dismissed all claims against the remaining Defendants because they too were not served consistent with Rule 4. Further, Plaintiff's allegations are violative of Fed. R. Civ. P. 8(a), 9(b), 11, and 12(b)(6).  Overall, Plaintiff failed to comply with the Federal Rules of Civil Procedure's service of process and pleading requirements (and local rules). Under Rule 41(b), a district court may dismiss the action with prejudice if the plaintiff fails "to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b);[10] *see Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003). However, dismissing an action with prejudice under Rule 41(b) is a harsh remedy and is "the death penalty of pleading punishments." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Justice Center*, 492 F.3d 1158, 1162 (10th Cir. 2007).  This is because dismissal with prejudice imposes the bar of res judicata against any future filing; meaning, the suit cannot be refiled. *See Ciralsky v. C.I.A.*, 355 F.3d 661, 669–70 (D.C. Cir. 2004). Given its severity, a district court must first consider certain criteria before dismissing with prejudicing under Rule 41(b):

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the Court

---

[10] Although the language of Rule 41(b) requires the defendant file to file a motion to dismiss, "the Rule has long been interpreted to permit courts to dismiss actions [on its own] for a plaintiff's failure to . . . comply with the rules of civil procedure or court's orders." *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003).

warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992) [hereinafter *Ehrenhaus* factors].

Here, the Court readily finds the first two *Ehrenhaus* factors are met. All the Defendants have been prejudiced by having to respond to "wordy and unwieldy" pleadings (most of which seek to relitigate issues in prior actions), which the Tenth Circuit has long recognized as prejudicial. *See Nasious*, 492 F.3d at 1162–63. The judicial process has substantially been interfered in two discernible ways. First, the Tenth Circuit has "observed the disadvantages to the administration of justice imposed in circumstances" where judges have the task of "measuring legal pleadings against certain criteria in Rule 12(b)," which is made "immeasurably more difficult by pleadings as rambling, and sometimes incomprehensible," as the Plaintiff's. *Id.*; *see Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007). Second, Plaintiff has litigated—and re-litigated—in the district court(s) and the court of appeals the same allegations over and over again. This case—and its progeny—has bounced around between magistrate judges, district judges, and appellate judges. There has been immense interference with the judicial process.[11]

Plaintiff may not continue to abuse the judicial process by filing improper proceedings and refusing to comply with statutes, rules, and Court orders. Despite being advised that his filings are improper, Plaintiff continues to abuse the judicial process by filing numerous pleadings and cases

---

[11] *See Matios v. City of Loveland,* 2021 WL 5232370, No. 21-cv-02194-WJM-NRN (D. Colo. Nov. 10, 2021)
*Matios v. City of Loveland,* 2022 WL 1015184, No. 21-cv-02194-WJM-NRN (D. Colo. April 5, 2022)
*Matios v. City of Loveland,* 2022 WL 13631881, No. 22-1125 (10th Cir. May 11, 2022)
*Matios v. City of Loveland,* 2022 WL 2734270, No. 22-1047 (10th Cir. July 14, 2022)
*Matios v. City of Loveland,* 2022 WL 3443800, No. 21-cv-02194-WJM-NRN (D. Colo. Aug. 9, 2022)
*Matios v. City of Loveland,* 2022 WL 6156867, No. 21-cv-02194-WJM-NRN (D. Colo. Oct. 7, 2022)
*Matios v. City of Loveland,* 2022 WL 18673240, No. 22-1242 (10th Cir. Nov. 17, 2022)
*Matios v. City of Loveland,* 2023 WL 4145905, No. 22-1394 (10th Cir. June 23, 2023)
*Matios v. City of Loveland,* 2023 WL 6127895, No. 21-cv-02194-PAB-NRN (D. Colo. Sept. 19, 2023)
*Matios v. City of Loveland,* 2023 WL 7328123, No. 21-cv-02194-PAB-NRN (D. Colo. Nov. 7, 2023)

totally devoid of any merit. "[T]he right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *Tripati v. Beaman,* 878 F.2d 351, 353 (10th Cir.1989) (citations omitted) (per curiam). District courts have the inherent power to regulate filings of abusive litigants. *Andrews v. Heaton,* 483 F.3d 1070, 1077 (10th Cir. 2007) (citing *Sieverding v. Colo. Bar Ass'n,* 469 F.3d 1340, 1343 (10th Cir.2006); *Tripati v. Beaman,* 878 F.2d at 352)).

The third and fourth *Ehrenhaus* factors—notice by the court and culpability of the litigant—can be viewed as the opposite sides of the same coin, "for the culpability of a *pro se* litigant for filing a still-prolix amended complaint depends in great measure on the usefulness of the notice he or she has received from the court about what is (and is not) expected in an initial pleading." *Nasious,* at 1163. In these situations, the concern is with the *pro se* litigant "unschooled in the law." *Id.* at 1163 n.5. Here, it is true the Court, in this instant action, has not provided Plaintiff with *express* notice that dismissal with prejudice will result for noncompliance with the rules. In this regard, the fourth factor might weigh in favor of the Plaintiff. However, Plaintiff has shown his concern that dismissal with prejudice is a possibility. *See* Docs. 28, at 8, 29, at 8. Additionally, the current motions to dismiss filed in this Court and the multitude of dismissals in his prior, identical cases has put Plaintiff on constructive notice that dismissal with prejudice is a possibility.[12] Thus, the fourth *Ehrenhaus* factor weighs in favor of dismissal with prejudice. The Court is also not convinced that the lack of express notice excuses Plaintiff and renders him inculpable under the third factor. This is because although Plaintiff is proceeding *pro se* (not *in*

---

[12] The Court need not give express notice that dismissal with prejudice is a possible sanction. Constructive notice is sufficient. *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149–50 (10th Cir. 2007) (notice is not a prerequisite for dismissal under *Ehrenhaus* and constructive notice—notice without express warning and objectively based on the totality of the circumstances—is sufficient); *Gross v. General Motors LLC*, 441 Fed. App'x 562, 565 (10th Cir. 2011) (constructive notice is sufficient to satisfy the notice element of the *Ehrenhaus* factors); *see also Anderberg v. Sitewise Corp.*, 2016 WL 1090021, at *3 (D. Colo. March 21, 2016) (finding that defendant's motion for discovery sanctions and dismissal constitutes sufficient constructive notice).

*forma pauperis*), this action is not his first rodeo. As the Court has pointed out *ad nauseum*, Plaintiff has instigated prior actions grounded in the very same allegations. *See supra* n.12. Thus, Plaintiff is aware of the rules for service of process and the Federal Rules of Civil Procedure and is not the completely unknowledgeable *pro se* litigant the third and fourth factors are designed to protect. *See Nasious*, at 1162–63; *Olsen v. Mapes*, 333 F.3d at 1204–05.

Lastly, the Court considers the fifth *Ehrenhaus* factor: efficacy of lesser sanctions. The Court is convinced that dismissal without prejudice or partial dismissal is inadequate given the unique circumstances of this case. If the Court were to dismiss this action without prejudice, it is clear that Plaintiff would continue to endlessly litigate this frivolous lawsuit and ignore the finality of prior adjudications. In fact, ignoring the finality of judicial decrees is precisely what Plaintiff is currently doing. Despite his prior litigation seeking to confirm a fraudulent arbitration award (which ended in dismissal and sanctions), Plaintiff re-filed his case seeking resolution of the exact same issues against court staff, judges, and lawyers. The endless litigation needs to stop and dismissal with prejudice achieves that result.

Overall, the claims and Defendants dismissed by the Court based upon failure to effect proper service are dismissed with prejudice under Rule 41(b). The first, second, and fifth factors undoubtedly weigh heavily in favor of dismissal with prejudice, along with absolute judicial immunity for the Defendant-judges. The third factor also weighs in favor of dismissal with prejudice, and the fourth factor weighs in favor of dismissal with prejudice. Given the history of this case, the current proceedings, and the conclusory and speculative allegations pled by Plaintiff, the *Ehrenhaus* factors clearly favor dismissal with prejudice.

## **CONCLUSION**

Plaintiff, through "naked assertions devoid of further factual enhancement" that *Iqbal* instructs courts to disregard, attempts to relitigate all the same issues that were handled years ago by the District of Colorado and the Tenth Circuit Court of Appeals. What's more, Plaintiff now ropes in—and wastes the time of—judges, a city, a law firm, and federal courts through vexatious and superficial allegations of a conspiracy between all the Defendants to deprive him of a self-proclaimed $300,000,000 arbitration award through alleged fraudulent court orders and bribes. This action is hereby dismissed with prejudice.

**THEREFORE, IT IS ORDERED** as follows:

- Plaintiff's Motion to Recuse (Doc. 14) is DENIED as MOOT.

- Defendant City and Firm's Motion to Dismiss (Doc. 15) Plaintiff's original complaint (Doc. 2) is DENIED as MOOT.

- Defendant City and Firm's Motion to Dismiss (Doc. 22) Plaintiff's Amended Complaint (Doc. 18) is GRANTED and Plaintiff's claims against these Defendants are DISMISSED WITH PREJUDICE.

- Defendant Judge Neureiter's Motion to Dismiss (Doc. 24) Plaintiff's Amended Complaint (Doc. 18) is GRANTED and Plaintiff's claims against Defendant Judge Neureiter are DISMISSED WITH PREJUDICE.

- Defendant Ashley Hernandez-Schlagel's Motion to Dismiss (Doc. 39) Plaintiff's Amended Complaint (Doc. 18) is MOOT due to this opinion.

- Plaintiff's claims against the remaining Defendants (Stephen C. Adams, Moses Garcia, Ashley Hernandez-Schlagel, Judge Timothy M. Tymkovich, and Jeffrey P. Colwell) are DISMISSED WITH PREJUDICE.

- Plaintiff's Motion for Time Extension (Doc. 25) is DENIED as MOOT.

- Plaintiff's Motion to Amend Petition for Relief (Doc. 30) is DENIED.

- Each and all of the claims alleged in Plaintiff's Amended Complaint (Doc. 18) are DISMISSED WITH PREJUDICE.

The Court shall enter its final judgment separately.

**IT IS SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE